UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 02-20030-CR-UNGARO-BENAGES/O'SULLIVAN

UNITED STATES OF AMERICA,

      Plaintiff,

v.

PATRICIO VIVES, *et al.*,

      Defendant.

                                   /

## **ORDER**

THIS MATTER is before the Court on Zeev Rosenstein's Motion by Third Party to Unseal (DE # 372, 10/26/06). The government filed a response, a supplemental response, and a second supplemental response to the Motion by Third Party to Unseal (DE# 379, 11/24/06; DE# 384, 12/5/06; DE# 387, 12/8/06). Having heard argument of counsel and reviewed the applicable filings and the law, it is hereby

ORDERED AND ADJUDGED that the Motion by Third Party to Unseal (DE # 372, 10/26/06) is **GRANTED IN PART** and **DENIED IN PART**. The Court previously issued an Order unsealing most of the docket entries referenced in the Motion by Third Party to Unseal (DE# 372, 10/26/06). See Order granting in part Motion by Third Party to Unseal (DE# 381, 11/28/06). The remaining docket entries, 105, 172, 348 and 351, are addressed in this Order.[1]

---

[1] This Order does not address whether the government has a discovery obligation to third party Zeev Rosenstein in his pending criminal case.

"When sealing proceedings or documents, a court must articulate the overriding interest 'along with findings specific enough that a reviewing court can determine whether the closure order was properly entered.'" United States v. Ochoa-Vasquez, 428 F.3d 1015 (11th Cir. 2004) quoting Press Enterprise Co. v. Superior Court, 464 U.S. 501, 510 (1984).

Docket Entry # 105 is an unsigned draft of a search warrant and a search warrant affidavit. The government has provided a copy of a redacted signed search warrant and affidavit to counsel for Zeev Rosenstein. There is no reason to maintain the draft of the search warrant and affidavit under seal as the government has not shown that the sealed draft is different than the signed search warrant and affidavit that has been provided. At the hearing, the government asked that the confidential informant number be redacted, if the Court unsealed DE# 105. When the government requests a sealing order for an affidavit in support of a search warrant, it must show that the need for secrecy justifies the sealing of the affidavit and that "sealing is essential to preserve higher values and is narrowly tailored to serve the interest." Baltimore Sun Company v Goetz, 886 F2d 60, 65-66 (4th Cir. 1989) (quoting Press Enterprise Co. v. Superior Court, 464 U.S. 501, 510 (1984). The government has made this showing concerning portions of DE# 105. The Court finds that the confidential informant number could hinder government investigations and lead to the identification of a cooperating witness. See In the Matter of Search of Office Suites for World and Islam Studies, 925 F.Supp. 738, 743 (M.D. Fla. 1996). In order to accomplish the unsealing of a redacted form of DE# 105, the undersigned has attached a copy of the redacted version of DE# 105 to this Order. The redacted version shall remain unsealed. The original unredacted version of the search warrant and affidavit at DE# 105 shall remain sealed.

Docket Entry # 172 contains verbatim quotes from a request made to Israel by the United

States pursuant to a Multilateral Legal Assistance Treaty (hereinafter "Treaty").  The government argues that these communications are confidential and that the treaty explicitly excludes private persons, including criminal defendants, from using the Treaty to obtain evidence. In its Second Supplemental Response, the government agreed to produce a redacted DE# 172 to third-party Rosenstein, provided that the verbatim recitations of communications between the United States government and the government of Israel remain sealed. See Government's Second Supplemental Response (DE# 387, 12/8/06). The Court finds that the government has not shown that DE# 172 should remain under seal. The case law and treaty provision relied on by the government merely state that private parties may not use the provisions of the Treaty to obtain information. Moreover, even if the communications between the United States and Israel are confidential, DE# 172  was produced to Joseph Rosenbaum, counsel for defendant Ashkenazi, as shown by the Certificate of Service. Thus, the government has waived this argument. **The Clerk is directed to unseal DE# 172**.

The government's arguments concerning DE# 348 and 351 were heard *ex parte* after the government advised the Court that giving a public reason for why portions of these documents should remain sealed would reveal the sealed matter. After considering the government's argument, the Court finds that a portion of paragraph 3 in both these documents shall remain sealed in order to preserve the government's interest in the information contained therein. The disclosure of portions of paragraph 3 of these documents may hinder ongoing investigations. Thus, portions of paragraph 3 of DE # 348 and 351 shall remain sealed. In order to accomplish the unsealing of redacted forms of DE# 348 and 351, the undersigned has attached copies of the redacted versions of DE# 348 and 351 to this Order. The redacted versions shall remain unsealed.

3

The original unredacted versions of DE# 348 and 351 shall remain sealed.

DONE AND ORDERED in Chambers at Miami, Florida, this **21st** day of December, 2006.

JOHN J. O'SULLIVAN
UNITED STATES MAGISTRATE JUDGE

Copies provided to:
United States District Judge Ungaro-Benages
All counsel of record

4



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 02-20030-CR-UNGARO-BENAGES (s) (s)
Magistrate Judge Stephen T. Brown

UNITED STATES OF AMERICA

v.

MORDECHAI COHEN,
  a/k/a "Flaco,"
DAVID RAUSHI,
  a/k/a "Dudu," and
ISRAEL ASHKENAZI,
  a/k/a "Shay,"

          Defendants.
_____/

## GOVERNMENT'S MOTION TO FILE, UNDER SEAL, UNSIGNED DRAFT OF SEARCH WARRANT AFFIDAVIT

The United States of America hereby submits this motion to file, under seal, an unsigned

draft of the New York state search warrant and accompanying affidavit involved in this case. By

way of background, the original, signed search warrant affidavit has been placed under seal by the

Criminal Court, City of New York, County of Queens, because it involves certain representations

about a New York confidential informant. This affidavit was the subject of Defendant Israel

Ashkenazi's recent motion to compel. For some time, the undersigned has requested of the New

York authorities that a copy be provided to him so that it may be produced in discovery in this case.

The government does not possess a copy of the signed affidavit.

On November 21, 2002, Magistrate Judge Stephen T. Brown ordered that the government

produce a copy of the original, signed affidavit within five (5) days, but reserved final ruling on

what, if any, sanctions should be imposed for failure to comply. Immediately, the undersigned again

contacted Assistant District Attorney Jennifer Etkin, who handled the case in New York state court and who could request that the signed, original affidavit be unsealed. On November 22, 2002, as a courtesy, Ms. Etkin faxed an unsigned draft of the affidavit to the government, and stated that she would request the unsealing of the signed original.

As of this writing, the undersigned has not received an unsealed copy of the original, signed affidavit, and upon placing another telephone call to Ms. Etkin, learned that she would be out of the office until after the Thanksgiving holiday. Accordingly, pursuant to Local Rule 5.4, the government hereby submits this motion to file, under seal, a copy of the unsigned draft affidavit. Because the signed affidavit is still sealed in New York, the government requests that this Court depart from the general policy of public filings and allow its draft copy to be filed under seal so as not to contravene the New York court order. Moreover, the government makes no representations about whether the filed draft is materially different from the original that was ultimately sworn to and signed.

The government requests that the unsigned, draft affidavit remain under seal until such time as it appears that the New York court will not unseal the signed, original affidavit. At that time, the government requests the opportunity to argue to this Court what parts of the filed draft copy should be unsealed. The government would seek to redact any portions of the unsigned, draft affidavit that were not included in the original, signed version, or any portions that may compromise the identity and activities of the New York confidential informant or that may otherwise be covered under the doctrine of investigative privilege. In the event that the New York court unseals the original, signed

2

affidavit, the government requests that the Clerk dispose of the filed draft copy by returning it, still

under seal, to the undersigned.  The government has submitted copies of the draft affidavit to the

Clerk as required under the local rules.

Respectfully submitted,

MARCOS DANIEL JIMENEZ
UNITED STATES ATTORNEY

By: _____

Brian K. Frazier
Assistant United States Attorney
Court No. A5500476
99 N.E. 4th Street, 7th Floor
Miami, Florida 33132
Tel: (305) 961-9160
Fax: (305) 536-7213

3

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was sent via first-class United

States Mail, postage prepaid, on this the 26th day of November, 2002, to:

Joaquin Perez, Esq.
   Attorney for Mordechai Cohen
6780 Coral Way
Miami, Florida  33155

Joseph Rosenbaum, Esq.
   Attorney for Israel Ashkenazi
2400 South Dixie Highway
Miami, Florida  33133

Steven N. Gordon, Esq.
   Attorney for David Raushi
400 Madison Avenue
New York, New York   10017

Brian K. Frazier
Assistant United States Attorney

4

CRIMINAL COURT CITY OF NEW YORK
COUNTY OF QUEENS: AR-1
------------------------------------------x                                    SEARCH WARRANT
IN THE MATTER OF THE APPLICATION
OF DETECTIVE SCOTT PURCELL
SHIELD #5873,
OF THE NARCOTICS BOROUGH QUEENS
MAJOR CASE UNIT
FOR A SEARCH WARRANT
------------------------------------------x
TO ANY POLICE OFFICER OF THE NEW YORK CITY
POLICE DEPARTMENT

Proof having been made this day before me by Detective Scott Purcell, Shield #5873
assigned to the Narcotics Borough Queens, Major Case Unit, that there is reasonable cause
to believe that such property to wit: ecstasy, narcotic paraphernalia, including but not
limited to plastic bags, records of ownership or use of this location, records of ecstasy
transactions, and U.S. Currency used to purchase ecstasy are being unlawfully possessed
and which constitutes evidence or tends to demonstrate that an offense was committed or
that a particular person participated in the commission of an offense in violation of Article
220 of the Penal Law of the State of New York at **1 West Street, Apartment Number
2607, New York, New York**, more particularly, apartment 2607 located on the twenty
sixth floor of a  thirty six story apartment building with 1 West Street written on the
outside of the said apartment building and the number 2607 clearly marked on the
apartment door.

You are therefore commanded to make an immediate search of **1 West Street, Apartment
Number 2607, New York, New York**, more particularly, apartment 2607 located on the
twenty sixth floor of a  thirty six story apartment building with 1 West Street written on
the outside of the said apartment building and the number 2607 clearly marked on the
apartment door  for ecstasy, narcotic paraphernalia, including but not limited to plastic
bags, records of ownership or use of this location, records of ecstasy transactions, and
U.S. Currency used to purchase ecstasy are being unlawfully possessed and if you find
such property or any part thereof to bring it and this warrant before me at Part AR-1 at
125-01 Queens Boulevard, Kew Gardens, New York 11415.

It is ordered that the affidavit of **Detective Scott Purcell** submitted in support of this
search warrant, remain sealed until further order of this court.

Dated:        Kew Gardens, New York
              July 17, 2001

              _____          _____
              JUDGE                          TIME

CRIMINAL COURT CITY OF NEW YORK
COUNTY OF QUEENS : AR-1
-------------------------------------x                               **AFFIDAVIT**
IN THE MATTER OF THE APPLICATION
OF DETECTIVE SCOTT PURCELL
SHIELD #5873,
OF THE NARCOTICS BOROUGH QUEENS
MAJOR CASE UNIT
FOR A SEARCH WARRANT
-------------------------------------x

<u>AFFIDAVIT FOR SEARCH WARRANT</u>
<u>CRIMINAL COURT OF THE CITY OF NEW YORK</u>
<u>COUNTY OF QUEENS</u>

State of New York )
County of Queens  )

I, Detective Scott Purcell, Shield #5873, assigned to the Narcotics Borough Queens, Major Case Unit, being duly sworn, deposes and says,

I am a police officer and have been for 10 and one half years. I have investigated narcotics cases for approximately 5 and one half years.

In the course of my duties with the NYCPD, I have been assigned for approximately five (5) years to the Organized Crime Control Bureau, where my principal duties have concerned investigations of mid-to upper-level narcotics dealers. These investigations have resulted in numerous arrests and convictions of individuals for violations of the controlled substance statutes of the State of New York and numerous arrests of individuals for violations of the money laundering statutes of the State of New York (Penal Law Articles 220, 221 and 470).

I have attended courses sponsored by the NYCPD relating to the investigation of organizations involved in trafficking narcotics, including instruction in the recognition and packaging of narcotics for both retail and wholesale distribution. I have also attended a course given by the NYCPD regarding court-ordered eavesdropping.

I have participated in approximately ten (10) court-authorized eavesdropping investigations. Those investigations involved the eavesdropping of telephones and paging devices. During the course of those investigations, I have worked with confidential informants. I have listened to and reviewed the transcripts of innumerable narcotics-related conversations in which various slang expressions common in the narcotics and money laundering trade were used. As a result of my training and this experience, I am familiar with the methods of communication and many of the cryptic terms and expressions used by narcotics traffickers and money launderers to disguise the true meaning of their communications.

A.     I am currently assigned to an investigation regarding alleged possession of ecstasy at 1 West Street, Apartment Number 2607, New York, New York, more particularly, apartment 2607 located on the twenty sixth floor of a thirty six story apartment building with 1 West Street written on the outside of the said apartment building and the number 2607 clearly marked on the apartment door (hereinafter the "subject location").

B.  The basis for the information contained in this affidavit is derived from information from fellow members of Major Case Team #3, Narcotics Borough Queens of the New York City Police Department and a confidential informant registered under confidential informant number ███████ (hereinafter CI). CI has been deemed reliable in the past in that the CI has provided information for at least two prior court ordered eavesdropping warrants and has provided information which has led to the seizure of over 350 kilograms of cocaine and 2.5 million dollars, the proceeds of narcotics trafficking. The CI engages in the transactions below at the direction of Major Case Team #3.

C.  I am informed by Detective Carmita Senft, that on July 16, 2001,  at approximately 2:10 p.m. , the CI received a telephone call on CI's cellular telephone[1] from a male later identified as Subject #1 who was calling from a hardline telephone assigned telephone number (212) 952-9892. A computer check was performed on telephone number (212) 952-9892 and said check revealed that this telephone number is assigned to a pay telephone located at Wu Plaza, Morris Street, New York. This pay telephone is around the corner from the subject location. I am informed by the CI that when the CI received the telephone call from Subject #1, the CI was in the County of Queens. Detective Senft intercepted and monitored the telephone conversation between the CI and Subject #1. ( Plant# 100/00). Detective Senft informs me that Subject #1 told the CI to meet Subject #1 at 14th Street and 3rd Avenue in Manhattan. I was informed by the CI that the meeting between CI and Subject #1 was arranged so that the CI could pick up a quantity of ecstasy from Subject #1 and order additional quantities of ecstasy if the CI was satisfied with the quality of the ecstasy.

D.     I am further informed by Detective Luis Alvarez that he observed the following: On July 16, 2001, at approximately 5:10 p.m. at 14th Street and 3rd Avenue, New York the CI met Subject #1 ( Male, White, approximately 28-30 years of age, approximately six feet tall, approximately 175-180 pounds with short black hair, wearing a white T-shirt and blue jeans.) I am informed by the CI that the CI and Subject #1 engaged in a narcotics related conversation where they discussed where and how they are going to make a transfer of money for ecstasy. Subject #1 informed the CI that Subject #1 would make a telephone call to his "Boss" to see if Subject #1's "Boss" would authorize Subject #1 turning over a sample of the ecstasy. I am further informed by the CI that the CI then observed Subject

---

[1]The CI has authorized the monitoring and recording of telephone conversations occurring over the CI's telephone involving investigations conducted by the New York City Police Department.

#1 use a pay telephone and make an undetermined number of telephone calls. Subject #1 then informed the CI that the sample was approved and that someone would be here in (20) twenty minutes to drop the sample of ecstasy off with the CI.

E. I am further informed by Detective Luis Alvarez that he observed the following: On July 16, 2001, at approximately 6:15 p.m., at the corner of Irving and Fourteenth Street, NY that he observed the following: CI and Subject #1 are greeted by Subject #2 (Male, White, approximately 25-30 years of age, approximately five feet eight inches tall, weighing approximately 180 pounds, with a beard and mustache, wearing a grey shirt with black stripes and black jeans). Subject #2 takes out a Marlboro cigarette box and hands the box to the CI. I am informed by the CI that the CI informed Subject #1 and Subject #2, of the following: "I'll take it to my guys and see if they like it". CI then left the location. I am further informed by Detective Alvarez that on July 16, 2001, the CI gave him the Marlboro cigarette box and that said box contained (13) thirteen ecstasy tablets stamped with different designs. I am informed by Detective Alvarez that he then vouchered the (13) thirteen ecstasy tablets under voucher number K993609. These ecstasy tablets were then sent to the NYPD lab for analysis.

F. I am informed by Detective Alvarez that surveillance of Subject #1 and Subject #2 continued. I am informed by Detective Alvarez that on July 16, 2001, at approximately 7:15 p.m he observed Subject #1 enter One West Street, New York.

G. I am informed by Detective Carmita Senft, that on July 16, 2001, at approximately 7:23 p.m., the CI received a telephone call on CI's cellular telephone from Subject #1 who was calling from an unknown telephone. I am informed by the CI that when the CI received the telephone call from Subject #1, CI #1 was in Queens County. I am informed by Detective Senft that she intercepted and monitored this telephone conversation between the CI and Subject #1. ( Call #3660  Plant# 100/00). Detective Senft informs me of the following regarding this telephone call: CI informed Subject #1 CI was pleased with the sample and that the CI wanted to buy the 65,000 tablets of ecstasy from Subject #1 and Subject #2. CI asked Subject #1 if Subject #1 could do the sale on July 17th in that CI informed Subject #1 that it was getting late. Subject #1 told the CI that he had the "product" with him and that he wanted to do the sale tonight. CI told Subject #1 that it would have to be done on July 17th. Based on my training and experience as a narcotics investigator, it is my opinion that when Subject #1 said "he had the product with him" that this meant that he had the 65,000 ecstasy tablets inside of the subject location. I am informed by Detective Alvarez that he was conducting surveillance outside of One West Street and that he did not observe Subject #1 using the pay telephone on Wu Plaza, Morris Street nor did Detective Alvarez observe subject #1 exit One West Plaza.

H. I am informed by Detective Carmita Senft, that on July 17, 2001, at approximately 12:55 p.m., the CI received a telephone call on CI's cellular telephone from Subject #1 who was calling from an unknown telephone. I am informed by the CI that when the CI received the telephone call from Subject #1, CI #1 was in Queens County. Detective Senft intercepted and monitored the telephone conversation between the CI and Subject #1. (

Call #3669  Plant# 100/00).  Detective Senft informed me that CI said to Subject #1 "I want to give you what they send from my country, twenty of them. Based on my conversations with the CI and my training and experience as a narcotics investigator, when the CI is referring to "what they send from my country" this means "cocaine" in a quantity of twenty kilograms. The CI was making arrangements to exchange with Subject #1 and make an exchange of 20 kilograms of cocaine for 100,000 ecstasy tablets. Subject #1 agreed to this exchange for the cocaine for ecstasy. Subject #1 informed the CI that they will make the transfer later in the day on July 17, 2001.

H. I am informed by Detective Carmita Senft, that on July 17, 2001, at approximately 1:08 p.m., the CI received a telephone call on CI's cellular telephone from Subject #1 who was calling from an unknown pay telephone. I am informed by the CI that when the CI received the telephone call from Subject #1, CI #1 was in Queens County. Detective Devivo intercepted and monitored the telephone conversation between the CI and Subject #1. ( Call #3673 Plant# 100/00). Detective Devivo informs me that during that telephone conversation Subject #1 said to the CI "that he had to go get the stuff and repackage it. Based on my training and experience investigating narcotics it is my opinion that Subject #1 had to repackage the ecstasy inside of the subject location because the number of tablets changed from 65,000 to 100,000 based upon the new terms of the exchange.

I. I am informed by Detective Alvarez that on July 17, 2001 at approximately 2:15 p.m. he observed Subject #1 exit One West Plaza. I am informed by Detective Luis Alvarez that on July 17, 2001, at approximately 2:30 p.m., at a phone booth located on Wu Plaza, Morris Street, NY, Detective Alvarez arrested Subject #1 for the sale of ecstasy that was made to the CI on July 16, 2001 at Irving Street and 14th Street, New York.

J. I am informed by Detective Alvarez that he then entered One West Plaza, the location where he had seen Subject #1 enter and exit on previous occasions and Detective Alvarez inquired of an employee of the building where Subject #1 resided. Detective Alvarez was directed by the employee to the subject location, apartment number 2607. Detective Alvarez knocked on the door of the subject location and immediately thereafter heard water running, the flushing of a toilet and noise coming from inside of the subject location. Based on Detective Alvarez's training and experience it is his opinion that someone in the location was attempting to destroy the ecstasy. At that time Subject #2 opened the door of the subject location and Detective Alvarez recognized Subject #2 from the sale of the ecstasy to the CI on July 16, 2001.

3.  I am informed by Detective Alvarez that he has had professional training as a police officer in the identification of ecstasy and controlled substances, he has previously seized substances which were determined to be such by a chemical analysis by the police department laboratory, and the substances in this case possessed the same physical characteristics as such previously chemically identified substances, and by Detective Alvarez's professional training and experience as a police officer, he is familiar with the common method of packaging such substance. Based on the foregoing, it is Detective Alvarez's opinion, that the substance which was given to him by the CI is ecstasy.

K.     The field team has frozen the location and is awaiting the results of this search
warrant application. This apartment has been frozen on the basis that Subject #2 had not
been apprehended for the sale of ecstasy on July 16, 2001 and that Subject #1 and Subject
#2 were prepared to sell 65,000 ecstasy pills to the CI on July 17, 2001. When members
of Major Case Team #3 approached the subject location they could hear noise inside of the
apartment and the sound of running water and a toilet being flushed repeatedly. It is my
belief that Subject #2 was attempting to destroy evidence and avoid it's discovery by law
enforcement.

4.     Based upon the foregoing reliable information and upon my personal knowledge,
there is reasonable cause to believe, that such property, to wit: ecstasy, narcotics
paraphernalia, including but not limited to plastic bags, records of ownership or use of this
location, records of ecstasy transactions, and U.S. Currency used to purchase ecstasy
United States Currency which are the proceeds of narcotics trafficking, are being
unlawfully possessed of which constitutes evidence or tends to demonstrate that an offense
was committed or that a particular person participated in the commission of an offense in
violation of Article 220 of the Penal Law of the State of New York at 1 West Street,
Apartment Number 2607, New York, New York, more particularly, apartment 2607
located on the twenty sixth floor of a thirty six story apartment building with 1 West
Street written on the outside of the said apartment building and the number 2607 clearly
marked on the apartment door.

5.     Based upon my experience as a narcotics investigator and my conversations with
CI, it is my belief that CI's safety would be jeopardized if CI's identity were revealed.
Therefore, it is requested that this affidavit remains sealed until further order of this court.

       WHEREFORE, I respectfully request that the court issue a warrant and order of
seizure, in the form annexed, authorizing the search of 1 West Street, Apartment
Number 2607, New York, New York, more particularly, apartment 2607 located on the
twenty sixth floor of a thirty six story apartment building with 1 West Street written on
the outside of the said apartment building and the number 2607 clearly marked on the
apartment door for ecstasy, narcotics, narcotic paraphernalia, including but not limited to
plastic bags, records of ownership or use of this location, records of ecstasy transactions,
and U.S. Currency used to purchase ecstasy United States Currency and directing that if
such property or evidence or any part thereof be found that it be seized and brought before
this Court, together with any such other and further relief that the Court may deem proper.

I know of no previous application in this matter has been made in this or any other court or to any other judge, justice or magistrate.

_____
POLICE OFFICER  RANK  SHIELD COMMAND

Sworn to before me this
July 17, 2001

_____
JUDGE

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

*Sealed*

### Case No. 02-20030-Cr-Ungaro-Benages

UNITED STATES OF AMERICA

vs.

MORDECHAI COHEN,

      Defendant.

_____/



NIGHT BOX
FILED

MAR 2 0 2006

CLARENCE MADDOX
CLERK U.S. DIST / SDFL / MIA

### GOVERNMENT'S SEALED MOTION SEEKING AUTHORIZATION FOR DEFENDANT TO COOPERATE WITH LAW ENFORCEMENT AGENTS WHILE ON SUPERVISED RELEASE

Comes now the United States of America, by and through the undersigned Assistant United States Attorney, and files this motion seeking authorization for defendant Mordechai Cohen to cooperate with agents of the Drug Enforcement Administration ("DEA") while on supervised release. In support of this motion, the government states as follows:

1.     On July 11, 2003, this Court sentenced the defendant to 87 months' incarceration in the above captioned case followed by a three year term of supervised release. The Court ordered that the term of supervision would be non-reporting if the defendant were deported. On August 24, 2005, this Court granted the government's motion for reduction of sentence pursuant to Fed. R. Crim. P. 35 and reduced the defendant's sentence to 53 months based on the defendant's cooperation with the United States. Prior to the defendant's release from federal custody, law enforcement agents secured the necessary approvals to have the defendant remain in the United States for the purpose of cooperating with the government.

2.     On March 6, 2006, the defendant was paroled into the United States by the Department of Homeland Security in order to continue his cooperation against other targets of an investigation stemming from the above captioned case. The defendant subsequently reported to the

United States Probation Office as required by this Court's Judgment & Commitment Order.

3.    The United States intends to use the defendant as a witness in the upcoming trial of

Ze'ev Rosenstein, another co-conspirator of the defendant.

4.    The undersigned has discussed this matter with Senior United States Probation

Officer Lisa Acosta, who has no objection to the relief sought in this motion. Ms. Acosta has met

with defendant Cohen as well as DEA Special Agent Robert F. Deak, the case agent assigned to the

above captioned case.

WHEREFORE, the undersigned respectfully requests that the Court authorize the defendant

to cooperate with agents of the Drug Enforcement Administration ("DEA") for the duration of his

term of supervised release.

Respectfully submitted,

R. ALEXANDER ACOSTA
UNITED STATES ATTORNEY

By: _____
Benjamin G. Greenberg
Assistant United States Attorney
Florida Bar No. 192732
99 Northeast 4th Street
Miami, Florida 33132-2111
Tel: (305) 961-9029
Fax: (305) 530-6168

2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 02-20030-Cr-Ungaro-Benages

FILED by _____ D.C.
DKTG

MAR 2 3 2006

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

UNITED STATES OF AMERICA

vs.

MORDECHAI COHEN,

    Defendant.

_____/

### ORDER GRANTING GOVERNMENT'S SEALED MOTION SEEKING AUTHORIZATION FOR DEFENDANT TO COOPERATE WITH LAW ENFORCEMENT AGENTS WHILE ON SUPERVISED RELEASE

THIS CAUSE is before the Court upon the government's motion seeking authorization for defendant Mordechai Cohen to cooperate with law enforcement while on supervised release.

THIS COURT has made a *de novo* review of the entire file and record herein and is otherwise fully advised in the premises. It is hereby:

ORDERED AND ADJUDGED that the government's motion is GRANTED. It is further

ORDERED AND ADJUDGED that the defendant is authorized to cooperate with law enforcement agents for the duration of his term of supervised release.

DONE AND ORDERED in chambers at the United States District Court, Miami, Florida, this 22 day of _Mar._, 2006.

URSULA UNGARO-BENAGES
UNITED STATES DISTRICT JUDGE

cc:  Benjamin Greenberg, AUSA
     Lisa Acosta, Senior U.S. Probation Officer

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 02-20030-Cr-Ungaro-Benages

UNITED STATES OF AMERICA

vs.

MORDECHAI COHEN,

       Defendant.

_____/

### GOVERNMENT'S AMENDED SEALED MOTION SEEKING AUTHORIZATION FOR DEFENDANT TO COOPERATE WITH LAW ENFORCEMENT AGENTS WHILE ON SUPERVISED RELEASE AND TO HAVE SUPERVISED RELEASE PERIOD BE NON-REPORTING

Comes now the United States of America, by and through the undersigned Assistant United States Attorney, and files this motion seeking authorization for defendant Mordechai Cohen to cooperate with agents of the Drug Enforcement Administration ("DEA") while on supervised release and to have defendant's term of supervised release be non-reporting. In support of this motion, the government states as follows:

1.      On July 11, 2003, this Court sentenced the defendant to 87 months' incarceration in the above captioned case followed by a three year term of supervised release. The Court ordered that the term of supervision would be non-reporting if the defendant were deported. On August 24, 2005, this Court granted the government's motion for reduction of sentence pursuant to Fed. R. Crim. P. 35 and reduced the defendant's sentence to 53 months based on the defendant's cooperation with the United States. Prior to the defendant's release from federal custody, law enforcement agents secured the necessary approvals to have the defendant remain in the United States for the purpose of cooperating with the government.

2.      On March 6, 2006, the defendant was paroled into the United States by the Department of Homeland Security in order to continue his cooperation against other targets of an

investigation stemming from the above captioned case. The defendant subsequently reported to the United States Probation Office as required by this Court's Judgment & Commitment Order.

3.      The United States intends to use the defendant as a witness in the upcoming trial of Ze'ev Rosenstein, another co-conspirator of the defendant.

4.      Allowing the defendant to serve his supervised release term without reporting to the United States Probation Office ("USPO") will facilitate his cooperation. Because of threats that Rosenstein and others are believed to have made against Cohen and other witnesses, the undersigned as well as the USPO believe that Cohen's safety will be increased if he is not required to report to the USPO in addition to reporting to the agents. Moreover, Cohen has been and will continue to be in daily telephonic contact with the DEA agents handling the Rosenstein prosecution. In addition, because the defendant's stay in the United States is being monitored by the DEA and is contingent on his cooperation, the government will be, in effect, tracking his progress in a fashion that is similar to the role that the USPO would have in such a case.

5.      The undersigned has discussed this matter with Senior United States Probation Officer Lisa Acosta, who has no objection to the relief sought in this motion based on the factors outlined above. Ms. Acosta has met with defendant Cohen as well as DEA Special Agent Robert F. Deak, the case agent assigned to the above captioned case.

WHEREFORE, the undersigned respectfully requests that the Court authorize the defendant to cooperate with agents of the Drug Enforcement Administration ("DEA") for the duration of his term of supervised release and order that the defendant's term of supervised release be non-reporting.

Respectfully submitted,

R. ALEXANDER ACOSTA
UNITED STATES ATTORNEY

By: _____
Benjamin G. Greenberg
Assistant United States Attorney
Florida Bar No. 192732
99 Northeast 4th Street
Miami, Florida 33132-2111
Tel: (305) 961-9029
Fax: (305) 530-6168

3

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 02-20030-Cr-Ungaro-Benages

UNITED STATES OF AMERICA

vs.

MORDECHAI COHEN,

      Defendant.

_____/

### ORDER GRANTING GOVERNMENT'S AMENDED MOTION SEEKING AUTHORIZATION FOR DEFENDANT TO COOPERATE WITH LAW ENFORCEMENT AGENTS WHILE ON SUPERVISED RELEASE AND TO HAVE SUPERVISED RELEASE PERIOD BE NON-REPORTING

THIS CAUSE is before the Court upon the government's motion seeking authorization for defendant Mordechai Cohen to cooperate with law enforcement while on supervised release and to have the supervised release period be non-reporting.

THIS COURT has made a *de novo* review of the entire file and record herein and is otherwise fully advised in the premises. It is hereby

ORDERED AND ADJUDGED that the government's motion is GRANTED. It is further

ORDERED AND ADJUDGED that the defendant is authorized to cooperate with law enforcement agents while on supervised release. It is further

ORDERED AND ADJUDGED that while on supervised release, the defendant's term of supervision shall be non-reporting to the United States Probation Office and that the defendant shall

report to agents of the Drug Enforcement Administration as directed.

DONE AND ORDERED in chambers at the United States District Court, Miami, Florida,

this _____ day of _____, 2006.

_____
URSULA UNGARO-BENAGES
UNITED STATES DISTRICT JUDGE

cc:    Benjamin Greenberg, AUSA
       Lisa Acosta, Senior U.S. Probation Officer